**Link to docs # 43, 44, 46, 47 & 49**

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(In Chambers) Order Construing the Disputed Patent Claims and Granting Defendants' Motion for Summary Judgment on No Literal Infringement**

Currently pending before the Court are Plaintiff's and Defendants' proposed *Markman* patent claims constructions and cross-motions for summary judgment on literal infringement. After considering the moving and opposing papers, as well as argument at the December 6, 2010 hearing, the Court construes the contested patent claims and GRANTS Defendants' motion for summary judgment.

I.    Background

Defendant Microsoft, Inc. ("Microsoft") offers its popular Microsoft Office software, which includes Microsoft Word ("Word"), to consumers in need of a word processing application and to computer manufacturers who seek to include the software on the computers they sell. *See Compl.* ¶¶ 19-20, 28, 34. Defendants Dell, Inc. ("Dell") and Hewlett-Packard Company ("HP") allegedly sell their computers with Microsoft Office already installed. *See id.* ¶¶ 28, 34. Plaintiff Walker Digital, LLC ("Plaintiff" or "Walker Digital") sued Microsoft, Dell and HP (collectively, "Defendants") for infringement of U.S. Patent No. 6,349,295 (the "'295 Patent"). Stated very generally, the '295 Patent allegedly covers the function in Microsoft Word that allows a user to look up information about a user-selected term or terms located in a document being created without having to stop work on the document. *See id.* ¶¶ 11-12.

**Link to docs # 43, 44, 46, 47 & 49**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

The '295 Patent was filed in late 1998 and, at that time, there was "little if any, integration between browsers and other commercially available software programs, such as word processing programs. Thus, if a user of a word processing program desire[d] to obtain information from the Web for use in a document that the user [was] creating, the user [had to] divert his or her attention from the primary task of creating the document to manually initiate a search." *'295 Patent*, at 2:13-19. Walker Digital's invention attempted to solve this problem by "spawn[ing] a background thread . . . to perform the supplemental search using a browser while the word processing application program maintains continuous control until the search results are obtained and viewed by the user." *Id.* at 2:58-63.

Before accepting the '295 Patent, the examiner assigned to the application first rejected all of Walker Digital's claims during the period known as the "prosecution" of the patent. *See Block Decl.*, Ex. 5 at 41-54 (initial claim rejection). The examiner rejected the claims because they were already covered by Wolfe U.S. Patent No. 6,006,252 (the "Wolfe patent"). Walker Digital amended the claims to specify that "Wolfe contains no disclosure concerning initiating a search without preempting an application program such as a word processing program, a spreadsheet program or a database management program." *See id.*, Ex. 6 at 67 (Walker Digital's first amended claims). Moreover, Walker Digital distinguished its invention from Wolfe on the grounds that "[t]he present invention is primarily concerned with a software application program, such as a word processing program, from which a database search is launched without interrupting the foreground processing of the application program." *Id.* Ultimately, the patent examiner accepted the claims, and stated that the Wolfe patent did not bar Walker Digital's patent because "Wolfe fails to show launching a search from an application program (word processing, spreadsheet program or database management program) where the search is being performed on a background thread on a database over a network without preempting the application program." *See id.*, Ex. 8 at 96.

Microsoft's Word program allegedly infringes on the '295 Patent because of its "Reference Tools" feature, which allows a user to "quickly reference information online and on [a] computer without leaving [the] Office program," and to "[l]ook up words or phrases in the Microsoft Encarta English dictionary easily while work[ing]. No more referring to print or other online versions that take [the user] from [the] workspace." *See Block Decl.*, Ex. 3 (from Microsoft Office Online: Help and How-to: About research services"). HP and Dell's practice

**Link to docs # 43, 44, 46, 47 & 49**

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|----------|------------------------|------|-----------------|
| Title    | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

of selling computers with, among others, Word pre-loaded also allegedly infringes the '295 Patent.

Walker Digital filed a motion for summary judgment on literal infringement, and Microsoft and HP filed a motion for summary judgment on no literal infringement. In order to determine whether the '295 Patent has been infringed, however, the Court must resolve the parties dispute about the scope and meaning of the patent claims. The Court ordered the parties to meet and confer about the claims in dispute and to file a Joint Claim Construction Statement. The parties did so and filed a Joint Stipulation about the claim terms they agree on, and those they do not. *See* Dkt. #41. In total, the parties agree on the construction of 10 claim terms, but do not agree on eight. *Id.* The disputed terms follow:

(1)     "search;"

(2)     "initiate a search;"

(3)     "search being performed on a background thread on said database over a network" and its constituent term "search being performed;"

(4)     "said search tool executes on a background thread;"

(5)     "initiating (or initiate) said search using a search tool responsive to said received command without preempting said first application program" and "to initiate from the first application program, on a background thread over a network, said search using a search tool responsive to said received command without preempting said first application program;"

(6)     "initiating (or initiate) said search using a background thread using said search tool responsive to said received command while said first application program maintains control" and "initiating from said first application program on a background thread over a network, a search of said search term using a search tool, while said first application program maintains control" and "initiate from said first application program, on a background thread over a network, said search using a

**Link to docs # 43, 44, 46, 47 & 49**

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|----------|------------------------|------|-----------------|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

background thread using said search tool responsive to said received command while said first application program maintains control;" and

(7) "initiating from said first application program, on a background thread over a network, a search of said search term using a search tool, while continuing to work in said document while said search is performed."

(8) "background thread"

*Id.* The Court will first construe the disputed claims, then determine whether Defendants infringed Plaintiff's '295 Patent.

II. Claims Construction

A. Legal Standard for Claim Construction

"[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).

Also, the Federal Circuit has "frequently stated that the words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), *cert. denied*, 546 U.S. 1170, 126 S. Ct. 1332, 164 L. Ed. 2d 49 (2006) (citation omitted). In fact, "the construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1324.

The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313 (citation omitted). "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." *Id.* (citation omitted). "That starting point is based on the well-settled understanding that inventors are typically persons skilled in the field of the

**Link to docs # 43, 44, 46, 47 & 49**

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

invention and that patents are addressed to and intended to be read by others of skill in the pertinent art." *Id.* (citation omitted). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances, general purpose dictionaries may be helpful. In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art. Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean. Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.

*Id.* at 1314 (internal citations and quotation marks omitted).

While considering the allowable sources of evidence to construe patent claims, a Court must consider the hierarchy of importance that the Federal Circuit has created for those sources of evidence. First, "the context in which a term is used in the asserted claim can be highly instructive." *Id.* at 1314. Also, the Federal Circuit has made clear that claims "must be read in view of the specification, of which they are a part. ... [T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (internal citation and quotation marks omitted). Furthermore, although the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes," *id.* at 1317, it should also be considered and given great weight as "intrinsic evidence." *Id.* Finally, a Court may consider "extrinsic evidence, which consists of all evidence external to the patent and prosecution history, including

Link to docs # 43, 44, 46, 47 & 49

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|----------|----------------------|------|-----------------|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

expert and inventor testimony, dictionaries, and learned treatises." *Id.* (citation and internal quotation marks omitted). However, while extrinsic evidence can shed useful light on the relevant art, it is less significant than the intrinsic record in determining the legally operative meaning of claim language. *Id.*

Finally, because of the importance of the specification in construing claim terms, the Federal Circuit's "cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Id.* at 1316. However, "[t]hat claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims." *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (citation omitted). Thus, "although the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323.

B.    The Court's Construction of the Claims

The Court construes the parties' disputed claim terms as follows:

1.    "Search" (in all asserted claims)

| Walker Digital's Proposed Construction | Defendants' Proposed Construction |
|----------------------------------------|-----------------------------------|
| The process of looking for and returning results | The procedure of looking for and returning results to be accessed by a user |

The Court construes the term "search" to mean "the process of looking for and returning results." The Court bases its construction on the patent specification and the ordinary usage of the term. First, the Court notes that Microsoft's *Computer Dictionary* defines the word search as "the process of seeking a particular file or specific data," *Microsoft Press' Computer Dictionary* (5th ed. 2002), and the *IEEE Standard Dictionary of Electrical and Electronics Terms* (the

Link to docs # 43, 44, 46, 47 & 49

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

"*IEEE*" dictionary) defines it as "[t]he examination of a set of items to find all those having a desired property or properties," *IEEE Dictionary* at 941 (6th ed. 1996).

More importantly, the specifications and claims of the patent itself illustrate why the Defendants' proposed construction cannot be correct. For example, Claim 1 includes, among others, the steps of "initiating" a search and "providing access to results" of the search. *See '295 Patent*, at 14:9-12. The fact that the claim identifies two distinct steps—first, the search itself, second, access to the results—rebuts Defendants' assertion that access to the results is part of the search process. *See Defs. Opp'n* 7:7-10 ("The dispute, fundamentally is whether the search procedure (or process) being described in the patent provides results to be accessed by a user [as Defendants contend], or merely provides some other form of results that may be unsuitable for access by a user."). Moreover, the specification provides that "[a]fter the supplemental search process 500 has completed either the 'data searching' or 'evaluate usage' tasks, the word processing application program 400 must process the results." *'295 Patent*, at 9:52-56. A construction of the term "search" that includes a user's access to the results defies the claim, the specification, and ordinary usage.

2.      "Initiate a search" (in all asserted claims)

| Walker Digital's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The first application program directs the commencement of the process of looking for and returning results | Execute/executing the series of steps that directly follow the command (or other search-triggering event) to prepare a search query for transmission over a network |

The Court construes "initiate a search" to mean "execute/executing the series of steps that directly follow the command (or other search-triggering event) to prepare a search query for transmission over a network." The primary disagreement between the parties centers around the need to delineate when the initiation of the search begins and when it ends. For example,

**Link to docs # 43, 44, 46, 47 & 49**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

Walker Digital reads Defendants' proposed construction to "conflate 'initiate a search' with 'search' [without] distinguish[ing] which 'steps' following the command relate to initiation of a search and relate to the search, once initiated." *Pl's Claims Construction Mot.* 11:15-23. Similarly, Defendants describe Walker Digital's construction as "extremely vague" because "it provides no guidance as to where the initiation of the search begins or ends." *Def's Claims Construction Mot.* 12:6-9. From this, the Court gleans that the "initiation of the search" is separate from the search it self, and that the construction more accurately defining the bounds of the "initiation of the search" is the correct one.

The Court adopts the Defendants' proposed construction because it answers the question of when the "initiate a search" process ends, whereas Walker Digital's proposed construction does not. Figure 4b of the specification shows, among others, three relevant steps involved in the patent, which the Court explains in its own language: (1) resolve the question of whether the command is to do a data search, (2) if so, prepare for the search, and (3) launch the search process. *See '295 Patent*, Fig. 4B. Step 2 is what is at issue in this construction, *see Pl's Claims Construction Mot.* 11:1-9, and it is clear that it is a step removed from the actual search process. Walker Digital's ambiguously worded proposed construction does not make that clear while Defendants' does.

3. "Search being performed on a background thread on said database over a network" (in claims 1-8, 10-14, and 16-17)

| Walker Digital's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The process of looking for and returning results is carried out: (1) on one or more background threads on the computer operating the first application program, (2) over a network, and (3) on a remote database. | Each step in the transmission of the search query from the local computer to a database over a network and in the receipt and formatting of the results from the database to enable viewing by the user occurs on a background thread. |

**Link to docs # 43, 44, 46, 47 & 49**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|----------|------------------------|------|-----------------|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

Defendants correctly suggest that the "dispute here involves the extent to which the overall search procedure must execute on a background thread." *See Def's Claims Construction Mot.* 20:7-8. With that in mind, the Court construes the claims as "the process of looking for and returning results is carried out: (1) on one or more background threads on the computer operating the first application program, (2) over a network, and (3) on a remote database." This construction comports with the patent specification which includes spawning the browser and waiting for a response on a background thread on the user's computer, *'295 Patent*, at 11:34-39, and searching a remote database, the internet or a network, *id.* at 2:49-57. In addition, Walker Digital's construction incorporates the earlier construction of "search."

Under Defendants' proposed construction, "each of the transmission, receipt, and formatting steps [of the search] occurs on a background thread, and hence allows uninterrupted processing of the first application program (in the foreground) until the results are ready to be obtained and viewed by the user." *See id.* 21:4-9. As discussed above, processing or formatting of the results is a step removed from the "search" itself and thus cannot properly be included in a construction of "search being performed . . . ." *See '295 Patent*, at 9:52-56 ("After the supplemental search process has completed . . . the word processing application program must process the results.").

In addition, the Court recognizes that Defendants' proposed construction is designed to ensure that the procedure does not occur on the foreground thread. *See Def's Claims Construction Mot.* 21:10-18. As construed, however, Walker Digital's construction does not leave room for processes to occur in the foreground as Defendants contend. As will be discussed below, whether a certain process can occur in the foreground or background is determined by the meaning of the term "background thread." *'295 Patent*, at 2:62-63; *see Phillips*, 415 F.3d at 1313 (instructing to "read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").

    4.    "Said search tool executes on a background thread" (in claims 3, 12, 20, and 26)

| Walker Digital's Proposed Construction | Defendants' Proposed Construction |
|----------------------------------------|-----------------------------------|
| | |

**Link to docs # 43, 44, 46, 47 & 49**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

| | |
|---|---|
| The search tool on the computer operating the first application program processes on a background thread, which is a thread distinct from the 'first thread' executing the first application program. | All of the search steps performed by the search tool are processed on a background thread, which is a thread distinct from the 'first thread' executing the first application program. |

  The Court construes the claims as "all of the search steps performed by the search tool are processed on a background thread, which is a thread distinct from the 'first thread' executing the first application program." The parties agree that the background thread on which the search tool executes is distinct from the first thread. The dispute regarding this claim involves whether only parts of the search tool operate on the background thread or whether *all* of the search tool's steps operate on the background thread. The claim states that the "search tool executes on a background thread," not that the search tool mostly operates on a background thread but in some instances operates on the first thread, or that the search tool operates on the first thread with at least one part of the tool operating on a background thread. Walker Digital implicitly concedes that its construction permits some of the steps performed by the tool to be operated on a first thread. *See Pl's Claims Construction Mot.* 16:7-15 ("The specification does not even describe the particular 'search steps' that are performed by the search tool, let alone state that *all* of the 'search steps' that are preformed by the search tool must be processed on a background thread."). But, as stated by the Defendants, "[s]uch a construction would eviscerate the distinction drawn between the two threads, and hence must be rejected." *Def's Claims Construction Mot.* 25:18-20.

    5.  The "Without Preempting" Limitation—"Initiating (or initiate) said search using a search tool responsive to said received command without preempting said first application program" (in claims 1-8, and 16) and "to initiate from the first application program, on a background thread over a network, said search using a search tool responsive to said received command without preempting said first application program" (in claims 71 and 76)

**Link to docs # 43, 44, 46, 47 & 49**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

| Walker Digital's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The first application program directs the commencement of the process of looking for and returning results, wherein the process of looking for and returning results uses a search tool which looks for information pertaining to the selected search term and the use of the search tool does not prevent the user from using the first application program. | Executing the series of steps that directly follow the command, using a search tool, to prepare a search query for transmission over a network such that, during each step, the user interface of the first application program remains continuously responsive to user input. |

The Court construes these claims to mean "executing the series of steps that directly follow the command, using a search tool, to prepare a search query for transmission over a network such that, during each step, the user interface of the first application program remains continuously responsive to user input." The Court does so for two primary reasons; first, the first portion of the construction comports with the Court's earlier construction of "initiate a search", and second, Defendants' construction of the "without preempting" clause more accurately reflects the prosecution history and patent specification.

The crux of the dispute here is the meaning of the "without preempting" limitation. Walker Digital insists that "without preempting said first application program" as used in claims one, 16, 71 and 76 means "the use of the search tool does not prevent the user from using the first application program." Defendants, on the other hand, suggest that the phrase means that "the user interface of the first application program remains continuously responsive to user input." *See Joint Claim Construction Chart*, at 1. Reading Walker Digital's proposed construction by itself broadly suggests that so long as the user can still use the first thread program, even if he must close other operations to get to it, the first thread program is not preempted. This adds ambiguity to the claim itself, and contradicts the specification and prosecution history.

**Link to docs # 43, 44, 46, 47 & 49**
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

First, the specification describes the process as follows:  (1) "[t]he supplemental search is launched in the background and the user continues working in the word processing application program 400 until the search results are received," (2) "the user continues the primary task of creating a document," and (3) after launching the search, the word processing program "enters a sleep state" where it acts upon a "user request," which may consist of "display[ing] characters on the screen, sav[ing] a file, copy[ing] and past[ing] data," or other keystrokes or mouse movements.  '295 Patent, at 4:52-56, 8:4-10.  This process meets Defendants' construction requiring that the first thread program remain continuously responsive.

Second, the prosecution history proves Defendants' construction, while refuting Walker Digital's.  Specifically, Walker Digital argues that the "without preempting" limitation grammatically modifies the "search tool" clause, not the "initiating said search" clause.  *See Pl's Markman Reply* 9:1-18.  During the patent prosecution, however, Walker Digital responded to the patent examiners rejection in light of the Wolfe patent by saying that "Wolfe contains no disclosure concerning *initiating a search without preempting an application program* such as a word processing program, a spreadsheet program or a database management program."  *See Block Decl.*, Ex. 6 at 67 (some emphasis added, some omitted).  Moreover, in the same document, Walker Digital stated that claim 76 "recites initiating a search from an application program that is not a browser, without preempting the application program."  *Id.* at 69.  To overcome the Wolfe patent during prosecution, Walker Digital clearly understood that it was the search initiation that would not preempt the foreground program, not the use of the search tool as suggested now.  That understanding controls.  *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (patentee cannot "recapture[e] through claim interpretation specific meanings disclaimed during prosecution").  To the extent that the claims differ but retain the "without preemption" limitation, the Court adopts Defendants' uniform construction.

6.    The "Maintains Control" Limitation—"Initiating (or initiate) said search using a background thread using said search tool responsive to said received command while said first application program maintains control" (in claims 10-14, and 17) and "initiating from said first application program on a background thread over a network, a search of said search term using a search tool, while said first application program maintains control" (in claim 24) and "initiate from said first application program, on a background thread over a network, said search using a background thread using said

**Link to docs # 43, 44, 46, 47 & 49**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

search tool responsive to said received command while said first application program maintains control;"  (in claim 72)

| Walker Digital's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The first application program directs the commencement of the process of looking for and returning results, wherein the process of looking for and returning results uses a background thread and a search tool which looks for information pertaining to the selected search term, and the first application program is the foreground program and is affected by user commands and data entry while the background threads and search tool are being used. | Executing the series of steps that directly follow the command to prepare a search query for transmission over a network such that, during each step, the user interface of the first application program remains continuously responsive to user input. |

The Court construes these claims in a similar fashion to its construction of the "without preempting" claims.  Like the "without preempting" claims, the determination of whether the phrase "while said first application program maintains control" modifies the initiation of the search or the search/search tool is the basis of the parties' dispute.  Grammatically, these claims are almost identical to the "without preempting" claims and the Court construes them alike.  As a result, the Court construes these claims to mean "executing the series of steps that directly follow the command to prepare a search query for transmission over a network such that, during each step, the user interface of the first application program remains continuously responsive to user input."

Although Defendants' construction of "maintains control," which the Court adopts, is the same as their construction of "without preempting," the Court is convinced that it is correct.  Walker-Digital rightly points out that different phrases are "presumed" to have different meanings, *Pl's Claims Construction Mot.* 21:22, but Defendants are equally correct in stating

**Link to docs # 43, 44, 46, 47 & 49**

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

that "claim drafters sometimes use different terms to define the exact same subject matter," *Def's Claims Construction Mot.* 18:13-14 (quoting *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2008)).  To resolve this seemingly incurable difference in authority cited to the Court, the Court looks to the prosecution history.

During the prosecution, Walker Digital itself recognized that the claims using the "maintains control" language should be understood "on the same basis" as the claims using the "without preempting" language.  With respect to claim 13, Walker Digital explained to the patent examiner that "[t]he remarks made above in regard to claim 1 (a "without preempting" claim) are also applicable to claim 13, which differs from claim 1 only by reciting that the search is initiated "using a background thread . . . while said first application program maintains control." *See Block Decl.*, Ex. 6 at 68.  According to Walker Digital, the "maintains control" claims are patentable "on the same basis as claim 1 [a "without preempting" claim]."  Despite using different words, the idea conveyed in the "maintains control" claims is the same as the idea conveyed in the "without preempting" claims. *See, e.g.*, '295 Patent, 2:49-63 ("In one implementation, an illustrative word processing application program spawns a background thread . . . to perform the supplemental search using a browser while the word processing application program maintains continuous control until the search results are obtained and viewed by the user.").[1]

      7.     The "Continuing to Work" Limitation—"Initiating from said first application program, on a background thread over a network, a search of said search term using a search tool, while continuing to work in said document while said search is performed."   (in claim 18)

| Walker Digital's Proposed Construction | Defendants' Proposed Construction |
|---|---|

---

[1] Walker Digital suggests that "[c]laims 17, 24 and 72 include similar phrases to that of claim 10, including the 'maintaining control' language." *See Pl's Claims Construction Mot.* 20 n.25.  The Court agrees with Walker Digital's conclusion that "[t]he phrases from those claims should be construed in the same manner as that in claim 10, accounting for the minor differences, as set forth in the Joint Claim Construction Chart." *Id.*  The Court thus adopts Defendants' constructions for the claims with the "maintaining control" limitation.

**Link to docs # 43, 44, 46, 47 & 49**

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

| | |
|---|---|
| The first application program directs the commencement of the process of looking for and returning results, wherein the process of looking for and returning results uses a search tool and is carried out on one or more background threads on the computer operating the first application program and over a network, such that the user is able to continue to work in the document while the process of looking for and returning results is carried out. | Executing the series of steps involved in (i) preparing the search query for transmission over a network, (ii) transmission of the search query from the local computer to a database over a network, and (iii) the receipt and formatting of the results from the database to enable viewing by the user using a search tool, such that, during each step, the user interacts with the first application program without any interruption in the processing of his inputs. |

The Court construes this claim to mean "executing the series of steps involved in (i) preparing the search query for transmission over a network, (ii) transmission of the search query from the local computer to a database over a network, and (iii) the receipt of the results from the database, such that, during each step, the user interacts with the first application program without any interruption in the processing of his inputs." Notably, this construction is not exactly the construction offered by Defendants. As the Court explained earlier, the initiation of the search and the search process itself does not involve formatting the results to enable viewing by the user. *See '295 Patent*, at 9:52-56. ("[a]fter the supplemental search process 500 has completed either the 'data searching' or 'evaluate usage' tasks, the word processing application program 400 must process the results."). With that modification, however, the Court adopts the remainder of Defendants' proposed construction.

The dispute here again involves the ability of the user to continue working uninterrupted by the supplemental search process. First, the adopted construction comports with the Court's earlier constructions of "initiate a search" and "search being performed." What is left is for the Court to construe is "while continuing to work." Walker-Digital's proposed construction, which allows for the mere ability to continuing working in the document, would allow the claim to be met even if the user had to switch between windows to get back to the word processing program. Such a construction deviates from Walker Digital's specification and summary of the invention, which states that the search occurs in the background so that "the user does not have to divert his

**Link to docs # 43, 44, 46, 47 & 49**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|----------|------------------------|------|------------------|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

or her attention from the primary task of creating the document to manually initiate the search."
The Court declines to adopt Walker-Digital's construction because the claim says that the search
is performed "while continuing to work," not that the search is performed "with the ability to
continue to work." *See On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340
(Fed. Cir. 2006) ("[T]he claims cannot be of broader scope than the invention that is set forth in
the specification."); *see also Ormco Corp. v. Align Tech, Inc.*, 463 F.3d 1299, 1311 (Fed. Cir.
2006) (distinguishing capability of performance from actual performance).

      8.    "Background Thread" (in all claims)

| Walker Digital's Proposed Construction | Defendants' Proposed Construction |
|----------------------------------------|-----------------------------------|
| A process or part of a process running in the background which requires no interaction with the user and is not affected by user commands or data entry. | (1) A single thread or path of execution that did not create the active window of the first application program in which the user is working; or, in the alternative<br><br>(2) A path of execution for a process or part of a process, where the path neither requires interaction with the user nor is affected by user commands or data entry. |

       Although the parties previously agreed to the definition of background thread found in the
Joint Stipulation, a disagreement arose and the Court vacated the earlier understanding. *See* Dkt.
#83. Faced with the task of construing "background thread," the Court construes it to mean "a
single thread or path of execution that did not create the active window of the first application
program in which the user is working." This construction specifically excludes the possibility
that a foreground or main thread could be considered a background thread where at least one
task executes in the background. *See Horowitz "Background Thread" Decl.*, ¶¶ 13-14 (Dkt.
#83-3).

**Link to docs # 43, 44, 46, 47 & 49**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

Plaintiff's construction, on the other hand, would allow just that.  By construing "background thread" to mean "a process *or part of a process* running in the background . . ." Plaintiff's greatly expand the scope of the term beyond what was understood at the time of the patent.  In fact, Plaintiff's contention that Microsoft Word is a background thread whenever a constituent part of it executes in the background (even if remaining responsive to user input), *see Pl's Opp'n to Def's Motion for Summary Judgment* 17:9-12, defies the '295 Patent specification which provides that "the one program that is currently affected by user commands and data entry is deemed to be in the 'foreground,' while any other programs are in the background."  *'295 Patent*, at 2:9-12.  Additionally, the Court's construction comports with Walker-Digital's understanding that the foreground thread is the thread associated with the active window because "background processes or tasks are assigned a lower priority . . . and generally remain invisible to the user unless the user requests an update or brings the task to the foreground."  *See* Dkt. #83, at 4:17-25 (citing *Microsoft Press' Computer Dictionary* (5th ed. 2002)).  Finally, Walker-Digital's own expert, Dr. Andrews, defined background thread as follows:  "A background thread is a distinct thread that, once created, just runs on its own . . . distinct from the main thread."  *Andrews Depo.*, Dkt. #117-2 at 104:22-25.

The parties' dispute about the construction of "said search tool executes on a background thread" has relevance here.  The parties, in their respective constructions of that limitation, agreed that the background thread is distinct from the foreground thread executing the first application program.  *See Pl's Claims Construction Mot.* 16:1-15.  Specifically, both parties agreed on the part of the construction of "said search tool executes on a background thread" that stated that a background thread is "a thread distinct form the 'first thread' executing the first application program."  *See Block Decl.*, Ex. 2 #14 (Dkt. #47-4 – Joint Claims Construction Chart).  Therefore, "the foreground thread is the thread of execution that is responsible for the window in which the user is working . . . [while] 'background' threads may be spawned to handle any number of tasks that do not require or allow user interaction."  *Horowitz "Background Thread" Decl.*, ¶¶ 13-14.

Having construed the claims, the Court moves on to the cross-motions for summary judgment for literal infringement.

II.     <u>Cross-Motions for Summary Judgment</u>

**Link to docs # 43, 44, 46, 47 & 49**

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

    A.    <u>Legal Standard</u>

    Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *See id.* at 257.

    A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *See Anderson*, 477 U.S. at 250-51. If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. *See Fed. R. Civ. P. 56(e).

    In patent cases, summary judgment of non-infringement is proper where there is no issue of material fact, the claims have been properly construed and a finding of infringement would be impossible. *See Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1576 (Fed. Cir. 1997). The infringement analysis involves consideration of whether every limitation set forth in [each asserted] claim [is] found in an accused product exactly. Thus if any claim is absent from the accused device, there is no literal infringement as a matter of law." *Becton, Dickinson & Co. v. Tyco Healthcare Group*, ___ F.3d ____, 2010 WL 2977612, at *3 (Fed. Cir. July 29, 2010) (internal citations omitted).

    B.    <u>Relevant Background</u>

**Link to docs # 43, 44, 46, 47 & 49**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

In its Complaint, Walker Digital claims that Defendants infringed the '295 Patent via claims 1-8, 10-14, 16-22, 24-26, 28-29, 71-72 and 76. Of those, claims 1, 10, 16-18, 24, 71-72, and 76 are independent claims. That means that if the independent claims are not infringed, the claims dependent on them also are not infringed.

Walker Digital filed a Motion for Summary Judgment on Defendants' literal infringement of the '295 Patent, while Defendants filed a Motion for Summary Judgment on no literal infringement. Microsoft contends that if the Court adopts its construction of the "without preempting," "maintains control," and "continuing to work" claims limitations then Microsoft Word cannot literally infringe on the '295 Patent.

The Court construed the "without preempting" and "maintains control" limitations to mean that in the initiation of the search, "during each step, the user interface of the first application program remains continuously responsive to user input." The Court construed the "continuing to work" limitation to mean that in the initiation of the search, "during each step, the user interacts with the first application program without any interruption in the processing of his inputs." All of the claims allegedly infringed are covered by one of the three limitations. For example, claims 1, 16, 71 and 76 all require a step to initiate a search on a background thread without preempting the first program. Claims 10, 17, 24 and 72 all require a step to initiate a search using a background thread while the first application program maintains control. Finally, claim 18 requires a step to initiate a search on a background thread while the user continues to work in the document. Because the Court construed all three claim limitations similarly, Defendants are correct in arguing that if Microsoft Word does in fact preempt or prohibit a user from working without interruption, then Microsoft Word does not infringe the '295 Patent. *See Def's Motion for Summary Judgment* 19:12-28; *see also Becton, Dickinson & Co. v. Tyco Healthcare Group*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) (a finding of infringement requires that "every limitation" must be "found in an accused product, exactly").

Before answering that question, however, the Court reexamines the meaning of threads and the difference between a background and foreground thread. As stipulated to by the parties, a thread is a process or part of a process undertaken by a computer. *See* Dkt. #41 (Joint Stipulation). A "computer environment with an operating system that allows a processor to execute code on multiple threads by switching rapidly between different threads" is understood to be a "multithreaded environment." *Id.* Where multiple threads are running, there is generally

**Link to docs # 43, 44, 46, 47 & 49**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

a foreground thread and background threads. A foreground thread, upon which a "first application program" runs, is affected by user commands and data entry, whereas a background thread runs in the background and is not "affected by user commands and data entry." *Id.*; *'295 Patent*, at 2:9-12. According to Professor Ellis Horowitz, if a process other than the word processing application operates on the first thread, "the user is prevented from working in the document." *See Horowitz Summary Judgment Decl.* ¶ 35. Therefore, if any part of the initiation of the search occurs on the foreground thread, the first application program is preempted and the use of the program is interrupted. *See id.*

Defendants' make two viable arguments as to why Microsoft Word does not infringe on the '295 Patent: first, that certain steps in the "initiation of the search" occur on the foreground, not background thread, and; second, that the initiation of the search makes Microsoft Word unresponsive or otherwise interrupts the user's processing ability. The Court addresses each in turn.

C.     Discussion

As mentioned, Defendants make two primary arguments as to their no literal infringement motion for summary judgment: (1) the '295 Patent requires that the initiation of the search occur on a background thread, where as the Microsoft Word search operates on the foreground thread; and (2) Microsoft Word becomes unresponsive to user input when parts of the search process are executed.

1.     Is the "Initiation of the Search" in the Foreground or Background?

Claims 1, 10, 17, 18, 24, 71 and 72 all require that the search be initiated on a background thread. *See '295 Patent*, at 14:33-19:43. As construed by the Court, "initiate a search" means "executing the series of steps that directly follow the command (or other search-triggering event) to prepare a search query for transmission over a network." As a result, all of the steps involved in the initiation of the search must occur on a background thread, not the foreground thread. Defendants offer evidence showing that the steps involved in the "initiation of the search" actually occur on the foreground thread, not a background thread, and argue that summary judgment for no literal infringement is therefore warranted. *See Horowitz Summary Judgment Decl.* ¶ 31; *Bailey Summary Judgment Decl.* ¶ 23 (each of the thirteen steps explained

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

in the initiation of the search process "always executes on Word's foreground threads . . . [which] mean[s] the same thread of software code execution that maintains the user interface and that receives input from the user"). According to Defendants, it is not until the fourteenth routine executed by the "Research" function that a "background thread" is invoked. *See Bailey Decl.* ¶ 24; *see also Horowitz Summary Judgment Decl.* ¶ 31.

Walker-Digital disputes that the steps in the initiation of the search operate on the foreground thread, instead arguing that Microsoft Word's search initiation process consists of steps that execute solely in the background, as covered by the '295 Patent. The Court construed "background thread" to mean "a single thread or path of execution that did not create the active window of the first application program in which the user is working." Walker-Digital offers the declaration of Dr. Gregory Andrews who states that because a user "can continue to insert data or issue new commands" and because "none of the routines that prepare the search query requires any interaction with the user and none are affected by user commands or data entry," Microsoft Word's initiation of a search process operates on a background thread. *Andrews Summary Judgment Decl.* ¶ 31 Dr. Andrews' conclusion, however, is based on a construction of "background thread" that the parties abandoned and that the Court did not adopt. *See Dkt. 83; see also Andrews Summary Judgment Decl.* ¶ 31. The dispute, therefore, is a dispute of law which the Court resolved when it construed "background thread." And, Walker-Digital concedes that it would not be able to maintain the argument "that the search query preparation and results formatting routines run on background threads" if the Court adopts Defendants' construction. *See Dkt. #83, at 13.*

Nor does any of the other evidence offered by Walker-Digital create a genuine issue of fact as to Defendants' non-literal infringement. Walker-Digital provides evidence that "some" of the steps identified by Defendants as being a part of the search "initiation" are not actually part of the "initiation," but instead deal with formatting and the display window. *See Pl's Opp'n to Def's Motion for Summary Judgment* 13:14-14:5. At most, however, Walker-Digital's evidence supports its position for only those tasks with reference to "RefPane." *See Andrews Summary Judgment Decl.* ¶ 30; *Horowitz Summary Judgment Decl.* ¶ 31. Walker-Digital does not present any evidence that the other seven tasks are not part of the search initiation process and merely saying that "some" steps are not included is not sufficient.

**Link to docs # 43, 44, 46, 47 & 49**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

Claims 10, 17, 18, 24, 71 and 72 of the '295 Patent all require that a search be initiated using a background thread.  Based on the evidence presented by Defendants showing that the steps required to initiate a search occur on the foreground thread, Defendants product cannot be said to infringe the '295 Patent.  *See Becton, Dickinson & Co. v. Tyco Healthcare Group*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) (a finding of infringement requires that "every limitation" must be "found in an accused product, exactly").

> 2.   Whether the "Research" Function Preempts, Removes Control and Interrupts the User's Ability to use Microsoft Word's Word Processing Feature

Defendants also argue that the "Research" Function of Microsoft Word does not infringe the '295 Patent because it clearly preempts the first application program, the first application does not maintain control, and because the user cannot continue to work in the document.  The Court agrees.

All of the independent claims require that the supplemental search perform (1) without preempting the first application, or (2) while the first application maintains control, or (3) while a user continues to work in the said document.  *See '295 Patent*, at Claims 1, 10, 16-18, 24, 71-72, and 76.[2]  Defendants again rely on the declarations of Dr. Horowitz and Mr. Bailey.  Dr. Horowitz's declaration provides that "[w]hile routines are executed on the foreground thread, the user is prevented from working in the document," *Horowitz Summary Judgment Decl.* ¶ 35, and Mr. Bailey's declaration similarly states that "during the time period in which" routines are running on the "main or foreground thread," a user "may not type a character string, delete text, create a new paragraph, change the font, and so forth," *Bailey Summary Judgment Decl.* ¶ 43.  In fact, the "Word document is effectively 'locked up' during this time." *Id.*  Defendants have, therefore, presented admissible evidence establishing that by processing certain routines on the

---

[2] The Court notes Defendants' additional argument that because Microsoft Word is a "browser" as defined in the Joint Stipulation, *see* Dkt. #41, it cannot infringe on Claim 76 because Claim 76 explicitly requires a program "that is not a browser," *'295 Patent*, at 20:40.  Because the Court determines that claim 76 is not infringed based on the "without preemption" limitation, the Court does not address Defendants' browser argument.

**Link to docs # 43, 44, 46, 47 & 49**

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al.* | | |

foreground thread, the word processing program loses control and is preempted such that it interrupts the user's experience.  *See Horowitz Summary Judgment Decl.* ¶¶ 28, 31, 34.

Walker-Digital concedes that "the search query preparation [initiation of a search]" occurs on a foreground thread under the Court's construction of "background thread," *see* Dkt. #83 at 13:2-8; *see also Pl's Claim Construction Opp'n* 2:3-4 ("initiating the search is done . . . in the foreground"), and the Court is left to consider whether there is any other admissible evidence establishing that the first program (Microsoft Word) remains continuously responsive to user input.  In support of its position that Word does remain continuously responsive, Walker-Digital offers evidence showing that the cursor in Word remains in the document while the search is initiated, that the initiation takes "a small amount of time," that a user could probably not perform an operation in the time that it takes to initiate the search, that the "operating system" stores keystrokes during the process so that they can be inserted into the document when the initiation is complete, and that Defendants admit that "the execution of the search query preparation routines would not affect a user's experience of using the application."  *See Pl's Summary Judgment Opp'n* 15:13-16:4.  None of that evidence creates a triable issue of fact to defeat Defendants' Motion.

Defendants' rightly point out that Walker-Digital's contention that the cursor never leaves the Word document while a search is initiated does not "answer the question" of whether Microsoft Word remains continuously responsive to user input.  *See Def's Summary Judgment Reply* 7:5-11.  Perhaps recognizing that, Dr. Andrews, who is Walker-Digital's expert, goes on and concedes that "[a] few keystrokes might be buffered temporarily by the operating system, but that can happen whether or not a search is running, because there are always many active background processes executing on any modern computer system."  *Andrews Summary Judgment Decl.* ¶ 32 (Dkt. #116).   That too is insufficient to overcome Defendants' evidence because the '295 Patent, as construed by the Court, requires that the *user interface* remain continuously responsive to user input, not that an *operating system* buffer characters for later use by the first application program.

Moreover, evidence that shows that the "routines execute very quickly . . . so from the user's standpoint, the user interface remains continuously responsive," or that "it is unlikely that a user could physically enter a character or perform an operation during the short time that it take the query preparation routines to execute" do not address the question of whether Microsoft

**Link to docs # 43, 44, 46, 47 & 49**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7514 PSG (PJWx) | Date | January 3, 2011 |
|---|---|---|---|
| Title | Walker Digital, LLC v. Microsoft Corp., *et al*. | | |

Word remains continuously responsive to user input. *See id.* ¶ 32; *Pl's Summary Judgment Opp'n* 15:18-20. That evidence cannot change the fact that execution of search initiation code on the "foreground thread . . . would block the user interface and thus prevent the user from continuing 'the primary task of creating the document' until the search process is terminated." *Horowitz Background Thread Decl.* ¶ 17 (Dkt. #83-3). Defendants' correctly point out that the issue "is not how long these software routines take to execute," but whether Microsoft Word is literally unresponsive during the applicable routine execution. Defendants' evidence establishes that, while Walker-Digital's evidence fails to adequately challenge it.

Walker-Digital's concession that "the search query preparation" does not necessarily occur on a background thread, together with the other evidence offered, do not overcome Defendants' proof that by executing certain tasks on the foreground thread, Microsoft Word is unresponsive to user input. Therefore, there is no triable issue of fact that remains, and Defendants have shown that Microsoft Word's "Research" function does not literally infringe *each* limitation in the '295 Patent's claims.

D.    Summary Judgment Conclusion

Based on the foregoing discussion, the Court GRANTS Defendants' no literal infringement Motion for Summary Judgment.

V.    Conclusion

The Court construes the disputed claims as discussed above and GRANTS Defendants' no literal infringement Motion for Summary Judgment.

**IT IS SO ORDERED.**